Paul Q. Goyette(SBN 137250)
Janelle F. Crandell(SBN 224994)
**GOYETTE, RUANO & THOMPSON, INC.**
**A Professional Law Corporation**
2366 Gold Meadow Way, Suite 200
Gold River, CA  95670
Ph: (916) 851-1900
Fax: (916) 851-1995
Email:  Paul@grtlaw.com

Attorneys for Defendant,
MORTEZA AMIRI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MORTEZA AMIRI,<br><br>　　　　　Defendants. | Case No.  23-cr-00269 JSW<br><br>**DEFENDANT MORTEZA AMIRI'S MOTION IN LIMINE NO. 1 TO EXCLUDE STATEMENTS OF CO-CONSPIRATORS**<br><br>Judge:　Hon. Jeffrey S. White<br>Date:　February 10, 2025<br>Time:　2:00 p.m.<br><br>Pretrial Conference Date: February 10, 2025<br>Trial Date: March 3, 2025 |

Defendant, MORTEZA AMIRI, by and through his attorneys of record, submits the following

Motion in Limine No. 1 and respectfully requests the Court to exclude the oral and written

statements of the defendants' co-conspirators as it relates to Mr. Amiri.

### I.　　**INTRODUCTION**

The Indictment in this case charges a single conspiracy among three defendant police officers,

including Morteza Amiri, Eric Rombough and Christopher Wenger.  Indictment (Dkt.1) ¶ 90.  Each

defendant police officer is alleged to have knowingly and intentionally worked together to harm,

threaten and intimidate residents in and around Antioch, California.  Allegedly, their actions violated

people's constitutional right to be protected from excessive force by law enforcement. *Id.* ¶ 90.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

It is anticipated the government will seek to admit various statements of alleged co-conspirators under Federal Rules of Evidence 801(d)(2)(E).  It is anticipated the government will argue these statements are also separately admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2).  The various statements of the alleged co-conspirators are contained within a 488-page exhibit consisting of messages between Defendants Amiri, Rombough, Wenger and other non-party individuals.  This 488-page document is listed as Exhibit 101, 212, 217, 218, 219, 901, 902, 903, 904, 923, 924, 925, and 932, on the government's Exhibit List.

## II.    <u>LEGAL STANDARD</u>

The fact that the government has alleged a conspiracy is not sufficient to trigger Rule 801(d)(2)(E)'s exception to the hearsay rule. Before admitting any alleged co-conspirator's statement, the court "must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("Preliminary questions [concerning] … the admissibility of evidence shall be determined by the court."); *see* Fed. R. Evid. 104(a). The government first must prove by a preponderance of the evidence "that there was a conspiracy involving the declarant and the nonoffering party." *Bourjaily*, 483 U.S. at 175–76; *United States v. Glenn*, 828 F.2d 855, 857 (1st Cir. 1987) (Breyer, J.) ("[T]he gist of the [conspiracy] offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed *as to each defendant*." (emphasis in original)). While the Court may consider the proffered statements in determining whether the government has met its burden, those statements "do[] not by [themselves] establish ... the existence of the conspiracy or participation in it." *United States v. Saelee*, 51 F.4th 327, 342 (9th Cir. 2022) (citing Fed. R. Evid. 801(d)(2)). The government also "must produce some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy." Id. (citation omitted).

The government therefore must provide evidence establishing that Mr. Amiri and all of the

2

other defendants—particularly those whose statements the government seeks to admit through its motion—together entered into an agreement to accomplish a common objective. See *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980). This "single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators." *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004) (citation omitted), as modified by 42 F.3d 1248 (9th Cir. 2005).

In addition to the existence of this single, overarching agreement, the government also must prove that "each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation." *Id.* (citation omitted); *Saelee*, 51 F.4th at 342 (same); *cf. Fernandez,* 388 F.3d at 1227 (evidence that defendants divided profits from drug sales weighed in favor of finding of single conspiracy). It is not enough that parties were involved in similar or parallel conduct:

> [T]he Supreme Court has distinguished between fact patterns in which members of a broader conspiracy seek to "achieve a single unlawful end" and those in which the alleged coconspirators each pursue "an end in itself, separate from all others, although all are alike in having similar illegal objects." In the latter class of cases, there is no common goal shared by the alleged participants in the single broader charged conspiracy, even though each alleged participant may have a "similar illegal object" as the other participants.

*United States v. Abdelaziz*, 68 F.4th 1, 44 (1st Cir. 2023) (quoting *Blumenthal v. United States*, 332 U.S. 539, 558 (1947)) (cleaned up); *see also id.* at 48 (rejecting government's argument that "the success of the venture" was a sufficient common goal to establish the existence of the conspiracy); *United States v. Harrison*, 942 F.2d 751, 757 (10th Cir. 1991) (distinguishing between an overarching conspiracy with a "common" goal and multiple conspiracies with "identical"—but not "in common"—goals).

"[M]ere association with members of a conspiracy, the existence of an opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy,

without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *Melchor-Lopez*, 627 F. 2d at 891. Likewise, awareness that others are involved in similar illegal conduct, even with overlapping parties, does not support the finding of a conspiracy. *See Kotteakos v. United States,* 328 U.S. 750, 755 (1946).

### III.    ARGUMENT

**A. The Government Has Failed to Establish the Existence of the Alleged Conspiracy.**

The government fails to meet its burden of proving that Mr. Amiri was a member of the conspiracy alleged in the Indictment. To establish a conspiracy, the government must demonstrate that Mr. Amiri entered into an agreement with Mr. Rombough or Mr. Wenger to harm, threaten, or intimidate residents through excessive force by law enforcement. However, the government presents no evidence of such an agreement.

Mere awareness of similar conduct by others is insufficient to prove a conspiracy. Even if Mr. Amiri engaged in similar conduct, independent actions do not automatically indicate coordination or agreement with others. While the government may cite certain statements or actions, these alone do not establish that an agreement or understanding existed. At best, the evidence suggests isolated, unrelated actions by individuals rather than a unified conspiracy.

The government has also failed to produce credible, independent evidence linking Mr. Amiri to any agreement. Co-conspirator statements cannot, on their own, establish the existence of a conspiracy. Independent corroborating evidence is required to connect the accused to the alleged conspiracy. Furthermore, such statements are admissible only if made in the course and furtherance of the specific conspiracy alleged.

The evidence does not demonstrate a single, cohesive agreement involving all defendants. Instead, it suggests the existence of isolated, independent agreements or actions by individuals. There is no evidence showing that all defendants were aware of the alleged conspiracy's scope, structure, or

4

participants, nor that they stood to gain from a shared objective or relied on the overall success of the conspiracy. Mr. Amiri's alleged individual actions appear to have been motivated by personal benefit or separate objectives, and not by a collective goal.

The government's evidence does not support the existence of a unified conspiracy encompassing Mr. Amiri and other defendants. Instead, it demonstrates isolated, independent alleged actions by individuals that fail to meet the legal standard for a single conspiracy. Accordingly, the government has not satisfied its burden to prove Mr. Amiri's participation in the alleged conspiracy.

**B. The Proffered Statements Between Mr. Rombough and Mr. Wenger to Others, and Non-Party Statements to Mr. Amiri Should Not Be Admitted.**

Since the government has failed to establish that Mr. Amiri was a participant in the conspiracy alleged in the Indictment, statements attributed to alleged co-conspirators should not be admitted. Furthermore, statements made by non-parties are also inadmissible. Specifically, regarding the categories of statements the government is expected to introduce:

- Text messages from Mr. Amiri's to others.

Mr. Amiri does not dispute that his statements made to others are party admissions and therefore admissible under Rule 801(d)(2).

- Text messages between Mr. Rombough and/or Mr. Wenger to others without Mr. Amiri's participation.

The government has not established that Mr. Amiri was a party to a conspiracy with Mr. Rombough or Mr. Wenger, so text messages between those defendants without Mr. Amiri's participation are inadmissible under Rule 810(d)(2)(E).  Even if a conspiracy was sufficiently proven (and it has not been), any such statements would be limited to those made "during the course and in furtherance of" the alleged conspiracy with Mr. Amiri and not a conspiracy involving any other defendant.

- <u>Text messages from non-parties sent to Mr. Amiri.</u>

The individuals whose statements are at issue are non-parties. There is no evidence linking them to the alleged conspiracy. Mere association or contact with parties to the case is insufficient to establish conspiratorial membership. Absent such evidence, their statements cannot be admitted under the co-conspirator exception. Even if the declarants were part of a conspiracy (which is denied), the statements at issue fail the additional requirement of being made "during and in furtherance" of the conspiracy. Casual comments, idle chatter, or statements unrelated to the objectives of the conspiracy are not admissible. The statements at issue appear to lack the requisite nexus to any alleged conspiracy. Admitting these statements would unfairly prejudice the defendant and confuse the jury. Non-party statements, particularly when not directly linked to the conspiracy, create a substantial risk of improper inference and guilt by association. Absent a valid exception, the statements of these non-parties remain inadmissible hearsay under Rule 802. They are out-of-court statements offered to prove the truth of the matter asserted, and no applicable exception has been demonstrated.

Whether any of these statements is admissible on other grounds is a matter that must be resolved at trial.

Dated:  January 15, 2025

Respectfully Submitted,

**GOYETTE, RUANO & THOMPSON, INC.**
**A Professional Corporation**

By:_____

JANELLE F. CRANDELL
Attorney for Defendant,
MORTEZA AMIRI

6