1  Paul Q. Goyette(SBN 137250)
   Janelle F. Crandell(SBN 224994)
2  **GOYETTE, RUANO & THOMPSON, INC.**
   A Professional Law Corporation
3  2366 Gold Meadow Way, Suite 200
   Gold River, CA  95670
4  Ph: (916) 851-1900
   Fax: (916) 851-1995
5  Email:  Paul@grtlaw.com

6  Attorneys for Defendant,
   MORTEZA AMIRI
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 
   UNITED STATES OF AMERICA,              Case No.  23-cr-00269 JSW
11 
                 Plaintiff,                **DEFENDANT MORTEZA AMIRI'S
12                                         REQUEST FOR EXPANDED
                                           ATTORNEY CONDUCTED VOIR
13     v.                                  DIRE AND ADDITIONAL
                                           PEREMTORY CHALLENGES**
14   MORTEZA AMIRI,
                                           Judge:  Hon. Jeffrey S. White
15              Defendants.                Date:   February 10, 2025
                                           Time:   2:00 p.m.
16 
                                           Pretrial Conference Date: February 10, 2025
17                                         Trial Date: March 3, 2025

18 

19     Defendant, MORTEZA AMIRI, by and through his attorneys of record, respectfully requests

20 the Court allow expanded attorney conducted voir dire, in addition to the proposed questions jointly

21 submitted by the parties and additional peremptory challenges.

22 

23     **I.     LEGAL STANDARD**

24     Federal Rule of Criminal Procedure 24 grants Courts the discretion to permit attorneys to

25 directly question prospective jurors. This practice is crucial for securing a fair and impartial jury, as

26 affirmed by federal case law. Additionally, the rule provides that the Court may authorize additional

27 

28 
                                            1
   DEFENDANT AMIRI'S REQUEST FOR ATTORNEY CONDUCTED VOIR DIRE AND ADDITIONAL PEREMPTORY CHALLENGES

peremptory challenges for multiple defendants and allow those defendants to exercise the challenges separately. (Fed. R. Crim. P. 24).

Direct questioning by attorneys aligns with the core purpose of voir dire—to preserve the accused's constitutional right to an impartial jury. As the Ninth Circuit explained in *United States v. Kechedzian,* 902 F.3d 1023, 1030 (9th Cir. 2018), proposed voir dire questioning serves good cause when it aims to uncover potential biases and ensure fairness. Attorney-led questioning complements the court's examination by allowing for more detailed inquiries tailored to case-specific issues, thus enhancing the impartiality of the jury. Additionally, the Supreme Court in *Morgan v. Illinois*, 504 U.S. 719, 729 (1992), recognized that voir dire plays a "critical function" in assuring that a criminal defendant's constitutional right to an impartial jury is upheld. The Court emphasized that uncovering potential juror biases requires a robust and thorough voir dire process, which attorney participation helps to facilitate.

The importance of peremptory challenges in ensuring an impartial jury is underscored by the U.S. Supreme Court in *Holland v. Illinois*, where the Court noted that peremptory challenges help eliminate extremes of partiality on both sides, thereby assuring the selection of a qualified and unbiased jury. *United States v. Prince*, 647 F.3d 1257, *Holland v. Illinois*, 493 U.S. 474.

## II.  ARGUMENT

**1. Good cause exists to permit several remedial measures to better identify jurors who harbor bias stemming from exposure to pretrial publicity.**

Counsel for Defendant Morteza Amiri retained Bryan Edelman, co-founder of Trial Innovation, Inc., a national full-service jury research firm. Mr. Edelman worked as a trial consultant for 20 years and has conducted pretrial and post-trial research on both criminal and civil cases across the country. Mr. Edelman have been retained as an expert in over 80 cases that have received significant publicity and asked to assess the impact of media coverage on the fairness of the trial proceedings. Mr. Edelman was retained to research and evaluate: (1) whether there was extensive

and prejudicial pretrial publicity in the-San Francisco-Oakland Division of the Northern District of California surrounding the criminal investigation into police misconduct which led to multiple indictments against former Antioch and Pittsburgh officers; (2) determine if the media coverage has impacted the Mr. Amiri's ability to obtain a fair and impartial jury in the San Francisco-Oakland Division; and (3) based on the findings, recommend appropriate remedial measures to protect the Mr. Amiri's ability to be tried by a fair and impartial jury. As part of his analysis, Mr. Edelman evaluated relevant newsprint, television, and social media coverage surrounding these events and conducted a community attitude survey of 400 residents in the San Francisco-Oakland of the Northern District of California.  (*See* Declaration of Bryan Edelman, Ph.D. at 1)

Mr. Edelman conducted a community survey to assess the impact of the media coverage on the San Francisco-Oakland Division jury pool.  Approximately 29% of the survey respondents were familiar with the case against Amiri or the widespread investigation into misconduct by Antioch and Pittsburgh police officers. The recognition rate increased to 45% for those who regularly read the newspaper and watch local news. In addition, community members have more than just a passing familiarity of this crime. Approximately 41% of survey respondents recognized at least two of seven media items tested in the survey. Fifty-seven percent (57%) of those familiar with the case had read, seen, or heard that the FBI found several racist text messages between Morteza Amiri and other police officers on their phones, and 27% were aware that Amiri texted photos of dog bite victims to other police officers. In addition, 18% of San Francisco-Oakland Division survey respondents heard that Amiri ordered his dog to bite people for entertainment as part of a game with other officers to violate residents' civil rights. Finally, eight percent (8%) knew that a jury convicted Morteza Amiri for paying a woman to take online college courses for him. (*See* Id. at 2)

These findings are particularly concerning given that several of these media items were significantly related to prejudgment. For example, 71% of San Francisco-Oakland Division

prospective jurors who knew that Amiri ordered his dog to bite people for entertainment reported that Amiri is guilty of using excessive force. In addition, 53% of those who heard that several Pittsburgh and Antioch police officers were charged with various crimes of misconduct believe he is guilty. (*See* Id. at 2)

The survey data also showed that the media coverage has shifted the burden of proof to the defendant. Many San Francisco-Oakland Division prospective jurors exposed to prejudicial media coverage hold a "presumption of guilt." Approximately 49% of survey respondents who knew about the case reported that Morteza Amiri is guilty of using excessive force. The "presumption of guilt" increased to 68% for those who recognized three or more media items tested in the survey. In contrast, just five percent (5%) maintained a "presumption of innocence" and reported that he is "not guilty." In addition, 39% of survey respondents reported that Amiri would have a difficult time convincing them that he is not guilty of using excessive force, which increased to 56% for those who recognized three or more media items. Just 23% reported that Amiri would not have a difficult time convincing them of his innocence. (*See* Id. at 2-3)

Evidence indicates that standard voir dire practices often do not lead to valuable disclosure from jurors. In a review of three trial transcripts, Balch (1976), found that just 41% of comments made during voir dire were made by jurors and 63% of these comments were "yes" or "no" responses. Failure to uncover bias becomes a greater concern in cases where jurors enter the courtroom after being exposed to prejudicial or sensational media coverage about a specific case in their community. In these cases, standard voir dire conditions should be improved to create an environment where jurors are more likely to feel comfortable discussing sensitive issues and disclosing potential biases. (*See* Id. at 29-30)

Mr. Edelman concluded that given the nature of the pretrial publicity—and its negative impact on the San Francisco-Oakland Division jury pool—the presumption of innocence as to Mr.

Amiri appears to have been threatened. It was his opinion that remedial measures should be taken to ensure that the Mr. Amiri's fair trial rights are not abrogated. These measures include—among other things—the use of an extensive juror questionnaire, attorney conducted voir dire, individual sequestered voir dire on issues that could taint the venire if conducted in a group setting (e.g., exposure to pretrial publicity), open-ended questions to fairly assess prospective jurors' opinions, excusing jurors who indicate on the questionnaire that they believe the defendant is guilty based on what they have learned in the media, avoiding rehabilitating jurors who express bias, and extra peremptory challenges. (*See* Id. at 3)

### 2. Allowing expanded attorney conducted voir dire of potential jurors ensures the selection of a fair and impartial jury.

Attorneys possess in-depth knowledge of the case's factual and legal nuances, enabling them to ask questions that identify jurors' potential prejudices more effectively. For example, in cases involving sensitive topics, such as racial bias or high-profile defendants, courts have acknowledged that attorneys' tailored questioning can reveal biases that may otherwise go unnoticed. The judicial oversight provided by Rule 24(a)(2) ensures that such questioning remains appropriate and focused.

Direct questioning by attorneys fosters openness among prospective jurors, enabling attorneys to delve into topics that may be difficult for jurors to address candidly with a judge. This transparency is vital for identifying biases or preconceived notions that could compromise a juror's impartiality.

In *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981), the Supreme Court highlighted the necessity of voir dire as a tool for uncovering potential biases, especially in cases where racial or ethnic prejudices may play a role. Allowing attorneys to ask questions directly ensures that these potential issues are adequately addressed.

While judges play a critical role in voir dire, attorneys' participation ensures that the process benefits from adversarial scrutiny. Judges may focus on general impartiality, but attorneys can probe

jurors' attitudes on specific matters relevant to the case. This balanced approach aligns with the adversarial system's principles and reinforces public confidence in the fairness of jury trials.

In *United States v. Cassel*, 408 F.3d 622, 628 (9th Cir. 2005), the court noted that voir dire questions must be sufficiently thorough to expose juror biases. Direct questioning by attorneys supplements judicial inquiry, offering an additional layer of scrutiny that strengthens the integrity of the jury selection process.

### 3. Additional peremptory challenges are a necessity to protect due process and ensure a fair jury amidst the limitations of voir dire.

Given the limitations of voir dire and the number of residents who have been exposed to negative media coverage surrounding these events, the parties should be granted additional challenges to protect the Defendants' due process rights and ensure a fair jury trial. Peremptory challenges play an essential role in addressing concerns that cannot be fully remedied through cause challenges. While cause challenges require the demonstration of explicit bias, peremptory challenges provide parties with a vital tool to exclude jurors who may appear impartial on the surface but exhibit subtle or unspoken indications of bias. Granting additional peremptory challenges in this case would allow all parties greater flexibility to address concerns arising from the unique challenges posed by negative pretrial publicity.

The Supreme Court has long recognized the importance of protecting the defendant's right to an impartial jury as a fundamental aspect of due process. In cases such as *Irvin v. Dowd*, 366 U.S. 717 (1961), the Court emphasized the dangers of pretrial publicity and the need for robust measures to protect against bias. Granting additional challenges in this case would demonstrate the court's commitment to upholding these principles and ensuring that the verdict is based solely on evidence presented at trial, free from external influences.

### III. CONCLUSION

Allowing expanded attorney conducted voir dire, along with granting additional peremptory challenges under Rule 24(a), is supported by federal case law and is essential for ensuring a fair administration of justice. The combined involvement of judges and attorneys in the voir dire process guarantees a comprehensive and impartial jury selection, protecting the defendants' constitutional rights and maintaining the integrity of the legal system. For these reasons, Mr. Amiri respectfully requests the Court allow expanded attorney-conducted voir dire and grant the parties additional peremptory challenges, in addition to the proposed questions jointly submitted by the parties.

Dated: January 25, 2025

Respectfully Submitted,

**GOYETTE, RUANO & THOMPSON, INC.**
**A Professional Corporation**

By: _____
JANELLE F. CRANDELL
Attorney for Defendant,
MORTEZA AMIRI

7
DEFENDANT AMIRI'S REQUEST FOR ATTORNEY CONDUCTED VOIR DIRE AND ADDITIONAL PEREMTORY CHALLENGES