ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Ajay.Krishnamurthy@usdoj.gov
    Alethea.Sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-CR-00269-JSW |
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MORTEZA AMIRI'S MOTION IN LIMINE 2** |
| v. | |
| MORTEZA AMIRI and DEVON CHRISTOPHER WENGER, | Pretrial: February 10, 2025<br>Trial: March 3, 2025<br>Court: Honorable Jeffrey S. White |
| Defendants. | |

U.S. RESP. TO DEF MOT. IN LIMINE 2
23-CR-269-JSW

Defendant Morteza Amiri moves to exclude statements that contain derogatory references to race or sexual orientation ("Motion"). Such statements have been identified by the government as party admissions and other co-conspirator statements made in the context of the defendants' and co-conspirators' communications related to the use of force. Amiri's motion should be denied. Although the United States will not seek to gratuitously admit inflammatory language related to race, gender, or sexual orientation, there are some instances of such language that are directly relevant to proving the conspiracy and excessive force offenses charged in the Indictment.

### A. Background

In Count One, Defendants Amiri, Rombough, and Wenger are charged with violating 18 U.S.C. § 241 (Conspiracy Against Rights). The Indictment alleges that, between in or about February 2019 and in or about March 2022, the defendants—together with others "known and unknown" to the Grand Jury—agreed to "injure, oppress, threaten, and intimidate residents of Antioch, California . . . in the free exercise and enjoyment of rights secured to them by the Constitution or laws of the United States," and specifically, the right "to be free from the use of unreasonable force by a law enforcement officer." Dkt. 1 ¶¶ 10, 90. Among other things, the Indictment alleges that the defendants "communicated with each other and with others . . . after specific deployments of excessive force and touted their applications of force," deployed force as "'punishment' to subjects beyond any punishment appropriately imposed by the criminal justice system," and agreed with each other "to carry out violent acts . . . even where the force was excessive." *Id*. ¶¶ 12, 13, 18.

The Indictment identifies examples of communications seized from Amiri and Rombough's cellular phones that reference both derogatory language about race, gender, or sexual orientation and the defendants' intent and agreement to use excessive force. For example, in February 2020, Amiri and Rombough exchanged the following messages about "gorillas" (Dkt. 1 ¶ 24):

| | | |
|---|---|---|
| **AMIRI**: | | sorry for the delay bro. had a mess on sycamore i was cleaning. copy just read it all |
| **ROMBOUGH**: | | Lol what did you get?<br>Gorillas |
| **AMIRI**: | | basically 😑😑😑 |
| **ROMBOUGH**: | | Lmao<br>Dog bite |

| | | |
|---|---|---|
| **AMIRI**: | | no they didn't push it that far. bunch of gorillas surrounding us and taunting a fight since we were hooking [a subject]. they were all pussies and didn't do shit. i wish they did |
| **ROMBOUGH**: | | I can shoot a few on Sunday<br>I better be riding with you turd |

As an additional example, in November 2021, Amiri and Rombough exchanged the following messages in which Rombough and Amiri exchanged additional messages and an image about a "gorilla" in reference to a Black suspect (Dkt. 1 ¶ 26):

| | | |
|---|---|---|
| **AMIRI**: | | imagine fat ass purcy on your fucking throat 😂 |
| **ROMBOUGH**: | | That's perfect I love it |
| **AMIRI**: | | i shit myself when i saw that. i thought he was gonna kill her |
| **ROMBOUGH**: | | Oh well one less gorilla pro-curating<br>[Image of smiling gorilla with lips making kissing face] |
| **AMIRI**: | | lmao! |
| **ROMBOUGH**: | | Stay safe bro. |

As an additional example, in August 2020, Wenger and Amiri exchanged the following messages in which Wenger referred to a lieutenant as "faggot ass" (Dkt. 1 ¶ 41):

| | | |
|---|---|---|
| **WENGER**: | | We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!! |
| **AMIRI**: | | Emphasized "We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!!" |
| **WENGER**: | | Lets get faggot ass [a lieutenant] something to stress out about lol |

The Indictment also alleges that each of the defendants, "while acting under color of law, willfully deprived an individual of the right, secured and protected by the Constitution and laws of the United States, to be free from the use of unreasonable force by a law enforcement officer" in one or more charged counts: Defendant Amiri as to A.A. (Count Two), R.S. (Count Three), D.R. (Count Four), and M.Z. (Count Five); Defendant Rombough as to L.R. (Count Six) and J.W. (Count Seven); and Defendant Wenger as to D.S. (Count Eight). The United States anticipates that the evidence presented at trial will show that multiple of the alleged victims are members of racial and/or ethnic minority groups

(including A.A., R.S., L.R., J.W., and D.S.), and one of them (D.S.) identifies with a gender that differs from the sex they were assigned at birth.     The United States anticipates that Rombough will testify that the defendants "harbored and discussed racial animus and/or bias in relation to [their] police work, which impacted our approach to policing in an unlawful manner." *See* Dkt. 239 at 6.

**B.     Legal Standards**

Evidence is relevant so long as it has any tendency to make a fact of consequence to the case more or less probable. Fed. R. Evid. 401(a), (b). The evidence does not need to prove an ultimate issue. *United States v. Boulware*, 384 F.3d 794, 805 (9th Cir. 2004). It does not need to prove an element of a charged offense, but merely has to make a fact that matters to the case's outcome more or less probable than it would have been without the evidence. *See id.* When making relevance determinations, courts should be mindful of the proponent's theory of the case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Windham v. Merkle*, 163 F.3d 1092, 1103–04 (9th Cir. 1998).

Relevant evidence is admissible unless "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," in which case a court "may exclude" it. Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy to be used sparingly," and "the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011) (citations omitted).

As described above, the defendants are charged with multiple instances of using excessive force, in violation of 18 U.S.C. § 242. To prove a violation of section 242, the government must establish that the defendant acted (1) under color of law; (2) willfully; and (3) to deprive the victim of a constitutionally or federally protected right. 18 U.S.C. § 242; *United States v. Lanier*, 520 U.S. 259, 264 (1997). This requires proof that the defendant acted with the specific intent to deprive a person of a constitutional right. *Screws v. United States*, 325 U.S. 91, 104 (1945). The defendant is not required to know the particular constitutional provision that the conduct violated or to "have been thinking in constitutional terms," *id.*, but he must have "acted with knowledge that [the] conduct was unlawful," *Bryan v. United States*, 524 U.S. 184, 191–92, 196 (1998). As the Seventh Circuit explained in the context of a police officer charged with violating section 242 for using unreasonable force, this means

U.S. RESP. TO DEF MOT. IN LIMINE 2                    3
23-CR-269-JSW

that, to act willfully, a defendant must "[know that the] force [i]s not reasonable and use[] it anyway." *United States v. Proano*, 912 F.3d 431, 442 (7th Cir. 2019).

C. **Argument**

Defendant Amiri moves to exclude statements as containing "particularly inflammatory and prejudicial language" that he alleges "are particularly problematic because they often carry inflammatory connotations that can unfairly bias jurors against a party." Motion at 1–2. Although the United States does not intend to introduce all such statements,[1] it does seek to admit certain statements by Amiri, Rombough, and Wenger that were made during discussions of excessive force and are relevant to proving the charges against the defendants.

Defendant Morteza Amiri filed a similar motion in related case 23-CR-264 JSW in advance of trial. Case No. 23-CR-00264-JSW-2, Dkt. No. 209 (Motion in Limine No. 4 to Exclude Unfairly Prejudicial Language). Because the -264 case involved allegations concerning wire fraud and conspiracy to commit wire fraud—crimes that did not concern of the use of force or individual victims, in contrast to the charges and allegations in this case concerning a conspiracy to violate civil rights and use excessive force—the government agreed to nearly all of Amiri's proposed redactions. Case No. 23-CR-00264-JSW-2, Dkt. No. 221.

Here, however, certain statements containing derogatory words or slurs related to race, gender, or sexual orientation are relevant evidence of the defendants' and co-conspirators' agreement to violate civil rights and their intent to willfully use excessive force while carrying out their duties as police officers as charged in the Indictment. As an initial matter, the statements and exchanges constitute evidence of the defendants' and co-conspirators' general hostility toward the individuals that they

---

[1] The United States agrees that some statements containing offensive slurs may not be relevant to proving the defendants' intent as to the offenses charged in the Indictment, and will not seek to admit those statements in its case in chief (although it reserves its rights with respect to impeachment and rebuttal). For instance, in Exhibit A to his Motion in Limine, Amiri identified an exchange between Amiri and Rombough in which Amiri stated: "you a bougie n****" and Rombough replied, "Hell Yeah Gucci n*****." As another example, Amiri identified an exchange between Amiri and Officer-11, in which Officer-11 states "I'll bury that n***** in my fields"; Amiri laughs at the comment; Officer-11 states "And yes…it was a hard R on purpose"; Amiri responds "haha there's no accidents with you on that" with a laughing emoji. As another example, Amiri and Rombough exchange statements including "felt like a sycamore n**** taking a pic with money" and "For the gorilla that died?" The United States does not intend to offer these exchanges into evidence in its case-in-chief.

policed and mutual agreement to demean them, which is relevant to the alleged conspiracy to "injure, oppress, threaten, and intimidate residents of Antioch, California." Dkt. 1 ¶¶ 10, 90.

Moreover, with respect to the alleged violations of 18 U.S.C. § 242, the United States is required to prove that the defendants *willfully* used unreasonable force. The defendants' statements demonstrate their extreme hostility to those they policed, and are therefore probative of that intent. As the Ninth Circuit has explained, evidence of an officer's racial bias can demonstrate why an officer "used excessive force without cause." *Price v. Kramer*, 200 F.3d 1237, 1251 (9th Cir. 2000); *see also, e.g.*, *id.* ("racial bias was important to proving the defendants conduct was 'malicious, wanton or oppressive or in reckless disregard of the plaintiffs' rights'"); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007) ("[W]here an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit."); *Sanders v. Jersey City*, 2021 WL 1589464, at *8 (D.N.J. Apr. 23, 2021) ("A juror, if it credited that testimony, could conclude that repeated use of a slur while punching an arrestee perhaps bespeaks a malign motive beyond that of self-defense or reasonable force.").

Moreover, some of the defendants' statements are also probative of their attitude towards their obligation to follow the law. For instance, the defendants referred to an APD supervisor as a "faggot" because the supervisor advised restraint in using force. Dkt. 1, ¶ 41. The defendants' disdain for the guidance of supervisors who attempted to curb their uses of force through remedial measures such as training is also relevant to proving the defendants' willfulness—the defendants' statements show their conscious decision to disregard the instructions they received about the appropriate use of force. In other words, the defendants' attitudes towards instruction provided by their supervisors is "probative to whether [they] acted in open defiance or reckless disregard" for their constitutional obligations. *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6634391, at *14 (D.N.M. Nov. 20, 2014).

Amiri cites Federal Rule of Evidence 403, but that does not justify the exclusion of statements such as the ones described above. Rule 403 provides that "[t]he court may exclude relevant evidence if

its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985). The rule is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). And even where evidence "is *highly* prejudicial, it is not necessarily *unfairly* prejudicial." *United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) (citation omitted).

Here, given that the probative value of the statements is so high, it is not substantially outweighed by the risk of unfair prejudice. For one, there is nothing "unfair" about introducing the defendants' own statements that reflect their specific attitudes towards those individuals they sought to use force against. Moreover, the language to which Amiri objects is "not especially worse or shocking than" than the evidence the jury will already hear. *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding a Rule 403 determination where the challenged evidence was "not especially worse or shocking than the transactions charged" and where the district court instructed the jury as to what inferences could properly be drawn from such evidence). The government expects the evidence introduced at trial to include testimony from victims of violent assaults, as well as evidence that Amiri and Wenger exchanged photographs of injuries they inflicted and encouraged each other to use unlawful force. *See* Dkt. 1, ¶ 44(a) ("That's what fucking happens when you run, you acquire a tax. His tax was paid properly.").

As a final point, Defendant argues that "[e]ven if such language has some relevance, the same point can typically be conveyed using less prejudicial evidence." Motion at 3. Not so here. There is no evidence that can convey the defendants' state of mind better than their own statements: the extreme nature of the language conveys the extreme disregard the defendants had for the constitutional rights of others, and it is necessary to address any defense that the defendants either used force appropriately, or lacked the requisite willfulness to be guilty of the crimes with which they were charged. To the extent there is any concern about the risk of unfair prejudice, this Court can mitigate any such risk by providing the jury with an appropriate limiting instruction.

U.S. RESP. TO DEF MOT. IN LIMINE 2   6
23-CR-269-JSW

### D. Conclusion

For the foregoing reasons, Defendant Amiri's motion in limine should be denied.[2]

DATED: January 22, 2025

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA SARGENT
ALEXANDRA SHEPARD
Assistant United States Attorneys

---

[2] The government notes that Defendant Wenger's position on this motion is unknown. In view of arguments he has made in motions before this Court, such as regarding co-defendant Rombough, Wenger may attempt to introduce some of the language Defendant Amiri moves to exclude while cross-examining Rombough. *See, e.g.*, Dkt. 186 at 22. To the extent Defendant Wenger is allowed to reference such language when examining Rombough, the government should not be precluded from likewise referencing such language Amiri and Wenger in its case-in-chief.