ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

 1301 Clay Street, Suite 340S
 Oakland, California 94612
 Telephone: (510) 637-3680
 FAX: (510) 637-3724
 Eric.Cheng@usdoj.gov
 Ajay.Krishnamurthy@usdoj.gov
 Alethea.Sargent@usdoj.gov
 Alexandra.Shepard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>MORTEZA AMIRI and<br>DEVON CHRISTOPHER WENGER,<br><br>   Defendants. | Case No. CR 23-00269 JSW<br><br>**UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT AMIRI'S REQUEST FOR EXPANDED ATTORNEY VOIR DIRE AND ADDITIONAL PEREMPTORY CHALLENGES**<br><br>Pretrial Conference: February 10, 2025<br>Trial Date:    March 3, 2025<br>Court:     Hon. Jeffrey S. White |

The United States opposes defendant Morteza Amiri's request for expanded voir dire and additional peremptory challenges (Dkt. 259). To begin with, the survey on which Amiri relies appears critically flawed. Although it purports to describe the extent to which potential jurors are aware of media coverage of this case, the survey offers no reason to believe that the recipients of the survey accurately reflect the views of the Northern District of California's jury pool. In any event, the survey also does not

USA MEMORANDUM IN OPPOSITION
23-CR-00269 JSW

answer the question at the heart of voir dire: whether prospective jurors could put aside any preconceptions that they have such that they could render an impartial decision. Finally, Amiri does not provide sufficient justification for the Court to deviate from its standard practices with respect to voir dire and peremptory challenges. His request should be denied.[1]

## I.    **Argument**

### A.  *The Edelman Survey is Flawed*

There are several reasons that this Court should be skeptical of the survey on which Amiri relies. First, according to the declaration of Bryan Edelman, Edelman conducted a "community attitude survey of 400 residents in the San Francisco-Oakland [region] of the Northern District of California." Dkt. 260-1 at 2. But Edelman does not explain how he selected those residents, and whether they capture the views of those eligible to be jurors. "Since the method utilized for selecting survey participants is unexplained, there are no grounds to feel confident that it accurately reflects the views of a cross-section of the [] jury pool." *United States v. Garcia*, No. CR 21-0129 (ABJ), 2022 WL 2904352, at *11 (D.D.C. July 22, 2022); *see also id.* ("The first problem with the information the defense has provided is that the surveys did not target the full range of this district's jury pool.").

Moreover, even if this Court were to accept the survey's results at face value, the results do not indicate that there will be difficulty in selecting a fair and impartial jury. According to Edelman, only "29% of the survey respondents were familiar with the case against Amiri or the widespread investigation into misconduct by Antioch and Pittsburg Police officers." Dkt. 260-1 at 3. That means at least 71% of respondents have not heard of this case, or any related cases, at all. In evaluating similar surveys, courts have been untroubled even where a significantly greater percentage of potential jurors had been exposed to information about the case. *See, e.g.*, *United States v. Miske*, No. 19-CR-00099-DKW-KJM, 2023 WL 2713638, at *3 (D. Haw. Mar. 30, 2023) (concluding that "the Court does not currently have a doubt that an impartial jury can be selected in Hawai'i" where "approximately 45-46 percent of the total survey respondents either are unaware of this case or have no opinion on the guilt" of

---

[1] The Court also denied Defendant Wenger's motion for a change of venue due to media coverage, finding that "Wenger has not made a showing that fair trial would be impossible due to pretrial publicity." Dkt. 232 at 23.

1  the defendant); *United States v. Tribble*, 470 F. Supp. 3d 139, 151 (D.P.R. 2020) (defendants did not

2  "show that this smaller population is differently or extraordinarily prejudiced against them" where "the

3  defendants' survey of English-speaking Puerto Rico residents found that more than half had not

4  concluded that the defendants were guilty.").

5        Equally as important, the survey does not answer the question at the heart of voir dire: whether

6  prospective jurors could put aside any preconceptions that they may have such that they could serve as

7  fair and impartial jurors. In other words, whether jurors have been exposed to media coverage about this

8  case is less important than whether they could render a decision solely on the evidence that they receive

9  in court. *Miske*, No. 19-CR-00099-DKW-KJM, 2023 WL 2713638, at *3 ("[T]heir survey needed to

10  actually *replicate* relevant questions that would be asked during voir dire in order for the Court to take

11  any meaningful value from the survey."). And on that point, the survey provides little information on

12  which the Court can base any decision.

13        Amiri's argument that the "survey data [] showed that the media coverage [] shifted the burden

14  of proof to the defendant" is a significant overstatement. Dkt. 259 at 4. For instance, Amiri contends that

15  "[a]pproximately 49% of survey respondents *who knew about* the case reported that Morteza Amiri is

16  guilty of using excessive force." Dkt. 259 at 4 (emphasis added). But Edelman's declaration does not

17  say how he defined which respondents "knew about the case"—and even assuming that any such

18  categorization includes all 29% of those who were "familiar with the case against Amiri *or* the

19  widespread investigation into misconduct by Antioch and Pittsburg Police officers," Dkt. 260-1 at 3

20  (emphasis added), that leaves a full 85% of respondents who did not report that they believed Amiri was

21  guilty. Similarly, although Amiri argues that "the 'presumption of guilt' increased to 68% for those who

22  recognized three or more media items tested in the survey," Dkt. 259 at 4, Edelman did not say how

23  many people in fact recognized three or more media items (a number presumably far below the 29%

24  who had heard of the broader investigation). And while Amiri argues that "71% of San Francisco-

25  Oakland Division prospective jurors *who knew that Amiri ordered his dog to bite people* for

26  entertainment reported that Amiri is guilty of using excessive force," Dkt. 259 at 3–4 (emphasis added),

27  only 18% of respondents reported hearing that Amiri gave those orders.

28        Beyond that, this Court should look skeptically at the questions posed by the survey. Because

1  "the respondents were informed that this was a public opinion poll, and the questions specifically asked

2  for a prediction based on what respondents had heard or read," the "survey sheds little light on what

3  members of the jury who have been screened for biases during voir dire and asked if they can put aside

4  what they have read or heard, and who are specifically instructed that they may base their verdicts only

5  on the evidence, will do when called upon to render a verdict with respect to an individual defendant."

6  *Garcia*, 2022 WL 2904352, at \*12. *See also United States v. Haldeman*, 559 F.2d 31, 64 (D.C. Cir.

7  1976) ("It is our judgment that in determining whether a fair and impartial jury could be empanelled the

8  trial court did not err in relying less heavily on a poll taken in private by private pollsters and paid for by

9  one side than on a recorded, comprehensive voir dire examination conducted by the judge in the

10 presence of all parties and their counsel pursuant to procedures, practices and principles developed by

11 the common law since the reign of Henry II.").

12      In short, because the survey appears critically flawed, it provides little reliable information on

13 which the Court can base any decision.

14      B.  *Expanded Voir Dire is Unnecessary*

15      Although Amiri requests "expanded attorney conducted voir dire of potential jurors," Dkt. 259 at

16 5, he does not say how this "expanded" voir dire would be different than what the Court already permits.

17 A trial judge is "accorded ample discretion in determining how best to conduct the voir dire." *Rosales-*

18 *Lopez v. United States*, 451 U.S. 182, 189 (1991). Under Federal Rule of Criminal Procedure 24(a), the

19 court may conduct the voir dire itself or allow the attorneys to do so. If the trial court chooses to conduct

20 the voir dire, it must permit the attorneys to "submit further questions that the court may ask if it

21 considers them proper." Fed. R. Crim. P. 24(a)(2)(B). Moreover, "[a] district court has considerable

22 discretion to accept or reject proposed questions, however, and as long as it conducts an adequate voir

23 dire, its rejection of a defendant's specific questions is not error." *United States v. Giese*, 597 F.2d 1170,

24 1183 (9th Cir. 1979).

25      Here, the Court has provided an extensive list of questions (with joint input from the parties) that

26 it intends to ask, *see* Dkt. 284, and in previous cases, the Court has also permitted the attorneys to ask

27 some additional questions. Nothing more is required.

28      C.  *Additional Peremptory Challenges Are Unnecessary*

Federal Rule of Criminal Procedure 24 governs the grant of peremptory challenges. It provides that, in felony cases such as this one, the government is entitled to six peremptory challenges and the "defendant or defendants jointly have 10 peremptory challenges." Fed. R. Crim. P. 24(b). Moreover, although the rule states that, in a multiple-defendant case, the district court "*may* allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly," *id.* (emphasis added), "there is no 'right' to additional peremptory challenges in multiple defendant cases," *United States v. Kahre*, 2009 WL 1067298, at *2 (D. Nev. Apr. 20, 2009) (citation omitted). "The award of additional peremptory challenges is not mandatory, but permissive, and rests in the trial court's sound discretion." *Id.*

Here, Amiri has not provided sufficient justification for the court to deviate from the standard number of peremptory challenges allotted by Rule 24. Indeed, courts have declined to do so in similarly complex (or even in more complex) trials. In *United States v. McClendon*, 782 F. 2d 785 (9th Cir. 1986), for instance, following a six-week trial, the Ninth Circuit affirmed the district court's decision to deny the request of the two defendants for extra peremptory challenges. *Id.* at 788. The Ninth Circuit pointed out that a defendant has no right to additional peremptory challenges and that it "was proper for the [district] court to consider the need for expeditious proceedings" in deciding whether to expand the number of challenges. *Id.* at 787–88. *See also United States v. Hueftle*, 687 F.2d 1305, 1309 (10th Cir.1982) (3 challenges for 15 defendants, while "not very generous," did not deprive defendants of a fair trial).

//

//

//

//

//

//

//

//

//

1    In short, "[t]he standard number of challenges, as outlined by the Rules, provide the parties

2    ample opportunity to select an impartial jury that is representative of the community." *Kahre*, 2009 WL

3    1067298, at *2. "Furthermore, the limited number of challenges will promote an efficient and

4    expeditious jury selection process." *Id.* Amiri's request should be denied.

5

6    DATED:  February 6, 2025                                    Respectfully submitted,

7                                                               ISMAIL J. RAMSEY
                                                                United States Attorney
8

9                                                               _____/s/_____

10                                                              ERIC CHENG
                                                                AJAY KRISHNAMURTHY
11                                                              ALETHEA SARGENT
                                                                ALEXANDRA SHEPARD
12                                                              Assistant United States Attorneys

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

USA MEMORANDUM IN OPPOSITION
23-CR-00269 JSW