Paul Q. Goyette (SBN 137250)
Janelle F. Crandell (SBN 224994)
**GOYETTE, RUANO & THOMPSON, INC.**
**A Professional Law Corporation**
2366 Gold Meadow Way, Suite 200
Gold River, CA 95670
Ph: (916) 851-1900
Fax: (916) 851-1995
Email: Paul@grtlaw.com

Attorneys for Defendant,
MORTEZA AMIRI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MORTEZA AMIRI,<br><br>Defendant. | CASE NO. 4:23-cr-00269-JSW<br><br>**DEFENDANT MORTEZA AMIRI'S OPPOSITION TO IMMEDIATE REMAND** |

**I.      BACKGROUND**

On March 14, 2025, Defendant MORTEZA AMIRI was convicted of Count 2, violating 18 U.S.C. § 242, deprivation of rights under color of law resulting in bodily injury or involving the attempted, actual, or threatened use of a dangerous weapon, and Count 5, violating 18 U.S.C. § 1519, for knowingly altering, destroying, mutilating, concealing, covering up, falsifying, or making a false entry in any record, document, or tangible object. On all remaining Counts, Mr. Amiri was found not guilty. Following the jury's verdict, the Court considered Mr. Amiri's immediate remand and directed the parties to submit briefs outlining their positions. Mr. Amiri is scheduled to be sentenced on June 3, 2025.

## II. LEGAL STANDARD

Under the Mandatory Detention Act of 1990, 18 U.S.C.S. § 3141 et seq., violent offenders, as well as those convicted of drug offenses with a maximum sentence of at least 10 years in prison and those convicted of any offense with a maximum sentence of life imprisonment or death, are not eligible for release simply because they meet the requirements. 18 U.S.C.S. § 3143(b)(2). As to such offenders, Congress has imposed an additional condition: Persons subject to the 1990 Act are not eligible for release unless it is clearly shown that there are exceptional reasons why their detention would not be appropriate. 18 U.S.C.S. § 3145(c). *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003).

One exceptional circumstance that might justify release under 18 U.S.C.S. § 3145(c) would be that a defendant's criminal conduct was aberrational. A defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance. Such a defendant may be guilty of a violent crime and yet may not be the type of violent person for whom Congress intended the mandatory detention rule. Moreover, if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons. *Id* at 1019.

In addition, a district court might consider under 18 U.S.C.S. § 3145(c) circumstances that would render the hardships of prison unusually harsh for a particular defendant. Chief among such circumstances is a sufficiently serious illness or injury. Although a defendant may ultimately be forced to serve a prison sentence regardless of his health, it may be unreasonable to force him to begin his sentence prior to the resolution of his appeal. Nor is foreclosed the possibility of finding exceptional circumstances in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being -- risks that might arise as a result of the

nature of his crime or even as a result of his possessing certain physical, psychological, or other characteristics. *Id* at 1019-20.

Furthermore, a district court may consider whether because of particular circumstances a defendant is exceptionally unlikely to flee or to constitute a danger to the community if he is permitted to remain free pending his appeal. A wholly incapacitated defendant, for example, might be entirely unable either to act violently or to abscond. Notably, the absence of any possible future dangerousness or flight is most likely to be present in cases in which other mitigating factors, such as a sufficiently serious illness or injury, also exist. In such cases, a district judge, after examining all the circumstances may well find cause to conclude that it would be unreasonable for the defendant to be incarcerated pending appeal. *Id* at 1021.

### III.     ARGUMENT

#### a.     Mr. Amiri has no prior history of violence and any criminal conduct was aberrational.

Mr. Amiri's criminal conduct in this case should be viewed as aberrational and an uncharacteristic deviation from an otherwise exemplary life. The law recognizes that a defendant with no prior history of violence may, in rare and extreme circumstances, engage in violent behavior in response to an unusually provocative situation. Such behavior, while criminal, does not inherently transform the defendant into the kind of violent offender for whom Congress intended the mandatory detention rule to apply. Mr. Amiri has led an exemplary life before the offense and has maintained a spotless criminal record demonstrating a longstanding commitment to his family, career, and community.  He will continue to contribute positively to society if released which presents "exceptional reasons" that weigh against mandatory detention.

Furthermore, Mr. Amiri was a police officer with a K-9 partner at the time of the incident. The conduct in question occurred while Mr. Amiri was actively detaining and arresting a suspect in the line of duty — a high-stress, fast-evolving situation that required rapid decision-making under intense pressure. This context underscores the aberrational nature of the event and highlights that Mr.

- 3 -

**DEFENDANT AMIRI'S OPPOSITION TO IMMEDIATE REMAND**

Amiri's actions were not borne out of malice or criminal intent, but rather an extraordinary and provocative set of circumstances inherent to law enforcement work. Moreover, the circumstances surrounding the offense were highly unusual and emotionally charged, which is the type of provocation that could cause even a reasonable, non-violent person to react uncharacteristically. This underscores that Mr. Amiri is not an ongoing danger to the community, nor the type of offender Congress sought to detain mandatorily.

        **b.    Immediate remand would impose exceptional risks on Mr. Amiri's physical safety and mental well-being.**

Mr. Amiri's unique and compelling circumstances warrant careful consideration for release pending sentencing. This case has drawn significant media attention, resulting in a highly publicized trial that further elevates the risks associated with his immediate remand. Mr. Amiri's extensive background in law enforcement, particularly his service in specialized units such as the gang unit, auto-theft task force, an assignment with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and canine patrol underscores the extraordinary nature of his situation. Throughout his career, he has arrested hundreds of violent and dangerous individuals, many of whom are likely detained within the local correctional facilities where he would be held pre-sentencing. The probability that these individuals recognize Mr. Amiri is substantial, and the potential for targeted retribution or harassment poses an exceptional and credible threat to his physical safety and mental well-being.

The risk is further magnified by the notoriety surrounding Mr. Amiri's trial. Media coverage has heightened public awareness, increasing the likelihood that detainees and even staff within the facility may view him as a high-profile target. Such an environment is inherently volatile and creates a severe departure from the ordinary risks faced by other detainees. Moreover, Mr. Amiri's psychological well-being must be taken into account. The persistent threat of violence, coupled with the isolating reality of protective custody or administrative segregation, which is a likely outcome given his background, can inflict profound psychological distress. These conditions would subject

Mr. Amiri to a form of punishment before sentencing, which runs counter to the principles of justice and due process.

For these reasons, Mr. Amiri's case presents exceptional circumstances that warrant his release pending sentencing. The confluence of his law enforcement history, the substantial risk of retaliation, and the intensified media exposure collectively amount to an "exceptional risk" that justifies an alternative to immediate incarceration.

### c. Mr. Amiri presents an exceptionally low flight risk, supported by compelling personal, financial, and community ties.

Under established legal precedent, a district court may consider whether, because of particular circumstances, a defendant is exceptionally unlikely to flee or to constitute a danger to the community if permitted to remain free pending sentencing. A wholly incapacitated defendant, for example, might be entirely unable either to act violently or to abscond. The absence of any possible future dangerousness or flight is most likely to be present in cases where other mitigating factors, such as a sufficiently serious illness or injury, also exist.

In Mr. Amiri's case, while not physically incapacitated, his unique situation marked by his strong ties to the community reinforce his lack of flight risk. He resides locally with his family, and his deep-rooted connections were evidenced by the significant presence of family and friends in the courtroom throughout his trial. He also owns and operates his own business, with employees who rely on him for their livelihoods. Mr. Amiri's consistent appearances before the court while out of custody since 2023 further demonstrate his reliability and commitment to the judicial process.

Additionally, Mr. Amiri's flight risk is significantly minimized by his personal and financial circumstances. His passport is currently held by pre-trial services, and his home is secured by a $100,000 bond which remains as clear indicators of his intent to remain present and engaged with the court proceedings. Beyond these measures, his family's situation further solidifies his commitment to stay. His wife was diagnosed with Postural Orthostatic Tachycardia Syndrome (POTS) following the FBI raids on their residence. She requires heart medication and cannot work full-time, leaving her

primarily at home to care for their two children. Furthermore, their son is in the early stages of being diagnosed with attention deficit hyperactivity disorder (ADHD), and the family is actively setting up a treatment plan. While these are not Mr. Amiri's own medical conditions, he serves as the primary provider and caregiver for his family. Mr. Amiri's active involvement and essential role in their well-being create an overwhelming personal and moral obligation to remain with his family and attend to their needs. The profound dependence of Mr. Amiri's family, both emotionally and financially, makes the notion of flight implausible.

## IV. CONCLUSION

Mr. Amiri's aberrational conduct, coupled with his otherwise exemplary life, service as a police officer, strong community ties, and the serious safety risks posed by incarceration in a local facility prior to sentencing, constitutes "exceptional reasons" justifying release under 18 U.S.C. § 3145(c). For these foregoing reasons, Mr. Amiri respectfully requests the Court deny an immediate remand prior to sentencing.

Dated: March 17, 2025

Respectfully Submitted,

**GOYETTE, RUANO & THOMPSON, INC.**
**A Professional Corporation**

By:_____
JANELLE F. CRANDELL
Attorney for Defendant,
MORTEZA AMIRI